# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ANTHONY TYRONE THOMAS,<br><br>　　　　　Defendant. | No. CR 05-0016<br><br>**REPORT AND RECOMMENDATION** |

　　　　This matter comes before the court pursuant to the defendant's May 11, 2005, motion to suppress evidence. The motion was referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation. The court held an evidentiary hearing on this motion on June 2, 2005, at which the defendant was present and represented by Stephen Swift. The government was represented by Special Assistant United States Attorney Rebecca Goodgame Ebinger. It is recommended that the motion to suppress be denied.

　　　　The defendant contends that the warrantless search of a safe found in the bedroom of an apartment where he was living violated his rights under the Fourth Amendment to the United States Constitution. The government contends that the search was permissible pursuant to the defendant's probation agreement, because of consent given by the lessee of the apartment, and because the defendant abandoned the property. The court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

　　　　On September 7, 2004, Deputy United States Marshal Steven Castelletti, Iowa State Trooper Michael McVey, Hiawatha Police Officer Charles Allaire, Sixth Judicial District Probation Officer Sam Black, and Hiawatha Police Chief Richard Pierce made a plan to arrest defendant Anthony Thomas on a warrant arising out of alleged violations of the

defendant's probation. The defendant was on probation for assaulting Officer Allaire. The group met at a convenience store near the defendant's residence for a meeting at which the members of the team were informed of the defendant's address, that he had assaulted others in the past, and that he was known to carry a black revolver.

The police proceeded to the defendant's residence on Robins Road in Hiawatha, Iowa. The police made contact with nearby residents who knew that the defendant was residing in the apartment above a particular business. As the police walked up the stairs to approach the apartment, they could see into the apartment through an open window. Deputy Castelletti observed two men coming out of a back bedroom toward the front of the apartment. The two men were defendant Anthony Thomas and a Mr. Heathman, the lessee of the apartment. When Mr. Heathman opened the door, the defendant was told that there was a warrant outstanding for his arrest. He was placed under arrest at that time.

The defendant repeatedly asked the police if he could go back to his bedroom to retrieve his pants and shoes, and to make a telephone call on his cellular telephone. Police officers agreed to accompany him back to the bedroom for this purpose. The defendant was not placed in handcuffs until after he got dressed and was able to use the cellular telephone.

As the police went through the living room area of the apartment, they observed drug paraphernalia on and around the coffee table. Specifically, they observed the kind of pipe that is used to smoke crack cocaine, a marijuana pipe, rolling papers, a torn baggie corner, and a glass jar with residue. Mr. Heathman was advised of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Because they had observed the drug paraphernalia, the police made a plan to search the apartment. After receiving his <u>Miranda</u> warnings, Mr. Heathman gave verbal consent to search the apartment and agreed to give written consent. However, because the police had not intended to search the apartment when they entered, Trooper Michael McVey had to go back to his vehicle to retrieve a written consent form. Mr. Heathman stated that he had been smoking crack and marijuana and indicated that the defendant had also been using controlled substances.

2

In the small back bedroom, the defendant got dressed and made a telephone call. Police officers noticed that there was a tan Sentry safe in plain view in the bedroom next to the bed. Trooper McVey had seen many similar safes when executing search warrants and conducting traffic stops. In his experience, people associated with drugs often used them to store cash, valuables, guns, and drugs.

Both Mr. Heathman and the defendant were asked about the safe that had been found in the bedroom. Mr. Heathman denied that it was his. The defendant then denied ownership of it as well. Later, Mr. Heathman said it belonged to the defendant but the defendant never responded to this statement. Shortly thereafter, the defendant was taken out of the apartment by Probation Officer Black. At that time, Trooper McVey retrieved a written consent search form which was executed by Mr. Heathman.

Following the written consent to search the apartment, the Sentry safe was opened by the police. A key ring found in the bedroom contained a key that fit the safe. The police believed that the key ring belonged to the defendant. The defendant thought that he was being arrested for a matter relating to a stolen Chrysler truck. He informed Chief of Police Pierce that he had a key to the truck in question on his key ring. There was a Chrysler key on that key ring. When the safe was opened, the police found a .22 caliber revolver, three rounds of ammunition, a shell casing, a very small amount of money, and an 8mm videotape.

On June 24, 2004, the defendant signed a probation agreement with the Sixth Judicial District Department of Correctional Services. In that agreement, it states, among other things:

> 3. I will maintain suitable residence as approved by my probation officer and provide a current address where I can be reached at all times. I understand and agree that my person, property, place of residence, vehicle and personal effects may be searched at any time, with or without a search warrant or warrant of arrest, by any probation officer or law enforcement officer having reasonable grounds to believe contraband is present. I further understand that a refusal to consent to a search constitutes a violation of this agreement. I will secure

> permission from my probation officer before changing address
> and will notify my probation officer within seventy-two (72)
> hours of any change in telephone service.

See Government's Exhibit 1. When the defendant was signed up for probation, this rule was specifically discussed with the defendant. The warrant for the defendant's arrest was issued later that summer because the probation office could not locate him.

## CONCLUSIONS OF LAW

### Validity of Probationer Search

In Griffin v. Wisconsin, 483 U.S. 868 (1987), the United States Supreme Court "upheld a search of a probationer conducted pursuant to a . . . regulation [that] permitted 'any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are reasonable grounds to believe the presence of contraband.'" United States v. Knights, 534 U.S. 112, 117 (2001) (quoting Griffin, 483 U.S. at 870–71). However, Griffin failed to delineate clear limits as to probationary searches. Accordingly, many state and circuit courts, including this court, narrowly construed Griffin as only allowing "a warrantless search of a probationer," pursuant to the Fourth Amendment, "if it is just like the search at issue in Griffin—i.e., a 'special needs' search conducted by a probation officer monitoring whether the probationer is complying with probation restrictions." Id.; United States v. Porter, No. CR98-0040, 1998 WL 34113372, at *2 (N.D. Iowa 1998). A subsequent decision by the Supreme Court has dismissed this narrowed interpretation of Griffin as "dubious logic." Knights, 534 U.S. at 117.

In pronouncing a clearer, broader application of the principle set forth in Griffin, the Supreme Court dismissed the idea that Griffin "implicitly holds unconstitutional any search that is not like it." Id. Instead, the Court pronounced a balancing test under the Fourth Amendment's reasonableness standard that examines "the totality of the

4

circumstances," Ohio v. Robinette, 519 U.S. 33, 39 (1996), quoted in Knights, 534 U.S. at 118, "with the probation search condition being a salient circumstance." Knights, 534 U.S. at 118. The test balances "the degree to which [a search] intrudes upon an individual's privacy," with "the degree to which it is needed for the promotion of legitimate governmental interests." Id. at 118–19 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). This test is based upon a standard of reasonableness. Id. at 118. Probation weighs heavily upon this balance because as a criminal sanction, probation precludes persons subject to it from enjoying "the absolute libert[ies] to which every citizen is entitled." Morrissey v. Brewer, 408 U.S. 471, 480 (1972), quoted in Knights, 534 U.S. at 119. In applying this test to the defendant in Knights, a probationer whose probation order allowed searches of his "person, property, place of residence, vehicle, [and] personal effects . . . at anytime, with or without a search warrant, warrant of arrest, or reasonable cause by any probation officer or law enforcement officer," the Supreme Court stated that such an order "diminished Knights' reasonable expectation of privacy" and was "reasonable" for the completion of the two main goals of probation—"rehabilitation and protecting society from future criminal violations." Knights, 534 U.S. at 119–20.

The Eighth Circuit has addressed Knights, most recently in United States v. Brown, 346 F.3d 808 (8th Cir. 2003), where it stated, "when a probationer consents to a search condition, his already-reduced expectation of privacy diminishes significantly." Id. at 811. Furthermore, the Eighth Circuit stated that "the government legitimately needs more freedom to search probationers" because of their greater propensity to violate the law. Id. at 811 (quoting Knights, 534 U.S. at 120). Hence, a probationer subject to a probationary search condition is subject to a search "pursuant to that condition without a warrant based only upon [an officer's] reasonable suspicion that the probationer is violating [the terms of] his probation." Id. at 811 (quoting Knights, 534 U.S. at 121).

A major issue in probationary search cases concerns the involvement of law enforcement officials other than probation officers. Prior to Knights, the circuit courts

5

adhered to a stalking horse theory, whereby a probationer search under Griffin was deemed invalid if it was used to help police evade the Fourth Amendment's usual warrant and probable cause requirements. United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997); United States v. Reyes, 283 F.3d 446, 462–65 (2d Cir. 2002); United States v. Watts, 67 F.3d 790, 794 (9th Cir. 1995); United States v. Scott, 945 F. Supp. 205 (D.S.D. 1996) (coining the term "stalking horse"). The Eighth Circuit adopted the stalking horse theory in United States v. McFarland, stating that "a parole search is unlawful when it is nothing more than a ruse for a police investigation." 116 F.3d at 318, quoted in Brown, 346 F.3d at 810–11. However, the Supreme Court invalidated this theory in Knights, stating that because the validity of probationary searches pursuant to search conditions depends on the Fourth Amendment reasonableness balancing test, no determination of "official purpose" was necessary. Knights, 534 U.S. at 122, quoted in Brown, 346 F.3d at 811–12. Although Knights makes no explicit mention of the stalking horse theory, the Circuits have interpreted the Supreme Court's invalidation of the major premise of the theory as an invalidation of the theory. Brown, 346 U.S. at 812 (stating that "the [Supreme] Court confirmed that the Fourth Amendment does not require a stalking horse inquiry"); United States v. Tucker, 305 F.3d 1193, 1200 (10th Cir. 2002); United States v. Stokes, 292 F.3d 964, 967 (9th Cir. 2002); Reyes, 283 F.3d at 465.

With the invalidation of the stalking horse theory, the necessary determination, as promulgated by the Eighth Circuit, involves balancing "any additional privacy intrusion[s] resulting from the presence of . . . additional personnel against the legitimate interests advanced by their presence." Brown, 346 U.S. at 812. The Eighth Circuit held that the burden on this determination falls heavily upon the probationer, as "[p]robation officers often must bring law enforcement along to ensure . . . [their] safety," and "ensuring probation officer safety outweighs any marginal, additional intrusion into . . . [a probationer's] privacy." Id. Thus, as long as there is "reasonable suspicion" that a probationer is "violating the terms of his [or her] probation," even if that suspicion would

6

not suffice for the issuance of a warrant, the probationer is subject to search pursuant to the search conditions of his or her probation order. Id.

In its adherence to Knights, the Eighth Circuit has not narrowly construed probationer search authority. See Brown, 346 U.S. at 810–13. The search at issue in Brown involved probation officers, accompanied by drug task force agents, searching the bedroom of a residence in which Brown was staying for an indeterminate amount of time. Id. at 810. At the time, Brown was thought to be in violation of his probation because probation officers were unable to verify the address he had provided. Id. Upon entering the residence and asking Brown which room he was staying in, Brown pointed to one of the bedrooms. Id. A search of that bedroom yielded a package of crack cocaine that was found inside a laundry hamper in the bedroom's closet. Id. Brown's wallet, with identification, was found in a dresser in the bedroom. Id. The search was deemed to satisfy the reasonableness requirements of the Fourth Amendment. Id. at 812–13.

Here, the police clearly had reasonable grounds for the search of the safe. There was drug paraphernalia spread about the living room just a short distance from the defendant's bedroom. The defendant's roommate confessed to using drugs and also incriminated the defendant. The police knew that drug users have such safes to conceal and protect guns, drugs and cash. Upon this evidence, the police were entitled to search the safe without a warrant.

## Abandonment

When a defendant denies any proprietary interest in a object pursuant to a search by law enforcement officials, the property is considered abandoned and a warrantless search of the abandoned property does not constitute an unreasonable search in violation of the Fourth Amendment. See Abel v. United States, 362 U.S. 217, 241 (1960). "This is because '[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.'" United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983)).

7

Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. "Intent may be inferred from words spoken, acts done, and other objective facts, and all relevant circumstances at the time of the alleged abandonment should be considered." United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993) (citations omitted). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property had relinquished his reasonable expectation of privacy so that the search and seizure is valid." Id. (citations omitted). Thus, a defendant has no standing to contest a search of property he or she has disclaimed ownership of because in denying ownership, the defendant abandoned any interest in it. See United States v. Sanders, 130 F.3d 1316, 1317 (8th Cir. 1997) (stating that when defendant disclaimed ownership of a suitcase, he surrendered any legitimate expectation of privacy he had in the bag).

Although not addressed by the Eighth Circuit, other circuits have held the abandonment doctrine applicable to places of stay or residence. The Ninth Circuit, in Elledge v. United States, 359 F.2d 404 (9th Cir. 1966), held that a defendant's disclaimer of ownership of a bag in his motel room was "analogous to abandonment." Id. at 405. The Court for the Southern District of New York has held the doctrine applicable to two defendants who disclaimed ownership of a bag in their apartment. United States v. Medina, 301 F. Supp. 2d 322, 331–32 (S.D.N.Y. 2004). In doing so, the District Court relied on Second Circuit precedent that differentiates privacy interests in a residence from privacy interests in an object within the residence. United States v. Haqq, 278 F.3d 44, 50 (2d Cir. 2002), quoted in Medina, 301 F. Supp. 2d at 332. The Court for the District of Kansas has held the doctrine applicable to the occupant of an apartment who disavowed ownership of a locked safe found in plain view in the bedroom closet of the apartment. United States v. Martinez, 842 F. Supp. 467, 472 (D. Kan. 1994). The District Court held that since the defendant had "disclaimed any interest in the safe," he lacked "standing to challenge the subsequent search of the safe." Id.

The defendant abandoned the safe by claiming that it was not his. He never waivered in his denial of ownership of the safe. Upon this evidence, the motion to suppress should be denied.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of the Report and Recommendation, that the defendant's May 11, 2005, motion to suppress be denied.

June 9, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[1] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.